O1AfCUSc

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------------x

3  In re:

4  CUSTOMS AND TAX ADMINISTRATION OF
   THE KINGDOM OF DENMARK (SKAT) TAX
5  REFUND LITIGATION                          18 MD 2865(LAK)

6  ------------------------------------x

7                                    January 10, 2024
                                     10:00 a.m.
8
   Before:
9
                       HON. LEWIS A. KAPLAN,
10
                                        District Judge
11
                        APPEARANCES
12
   HUGHES HUBBARD & REED LLP
13      Attorneys for Plaintiff SKAT
   BY:  NEIL OXFORD
14      MARC A. WEINSTEIN
        WILLIAM R. MAGUIRE
15
   SHARON MCCARTHY
16 NICHOLAS BAHNSEN
        Attorneys for Defendants John van Merkensteijn, Basalt
17 Ventures LLC Roth 401(k) Plan

18 ALAN SCHOENFELD
   ANDREW DULBERG
19      Attorneys for Defendants Richard Markowitz, RJM Capital
   Pension Plan
20
   MICHELLE RICE
21 Attorneys for Defendants Ronald Altbach, Roadcraft Technologies
   LLC Roth 401(k) Plan
22
   MICHAEL ROSENSAFT
23 DAVID GOLDBERG
        Attorneys for Defendants Robert Klugman, RAK Investment
24 Trust

25

O1AfCUSc

1                        APPEARANCES CONTINUED

2    TOM DEWEY
         Attorney for Defendant Adam LaRosa
3
     JOHN BLESSINGTON
4        Attorney for Defendant American Investment Group of New
     York, L.P. Pension Plan, Stacey Kaimer, Robert Crema, Acer
5    Investment Group, LLC

6    NEIL BINDER
     GREG PRUDEN
7        Attorneys for third-party Defendant ED&F Man Capital
     Markets Ltd.
8
     JOE LOPICCOLO
9        Attorney for Defendant The proper Pacific 401(k) Plan,
     Doston Bradley, The FWC Capital LLC Pension Plan, Roger Lehman
10
     KARI PARKS
11       Attorney for Defendants Goldsteins Pension Plan, *et al.*

12   JOHN HANAMAIRIAN
         Attorney for Defendants Acorn and Cambridge Way
13
     AMY MCKINLAY
14       Attorney for Defendants Sander Gerber and Sander Gerber
     Pension Fund
15
     ERIC SMITH
16       Attorney for Defendants John Doscas – Sterling Alpha
     Pension Plan, David Freelove – Del Mar Pension Plan and
17   Federated Pension Plan

18

19                               oOo

20

21

22

23

24

25

O1AfCUSc

1          (Case called)

2          THE COURT:  Good morning, everybody.

3          We're not going to go through the exercise of asking

4    each and every one of you individually whether you're ready.

5          Mr. Weinstein, you have a proposal.  I want to know

6    how you actually propose to try 12 defendants and 63 cases at

7    one time, so why don't you start off.

8          MR. WEINSTEIN:  Sure.

9          THE COURT:  Use the podium, please.

10         MR. WEINSTEIN:  There was a taller litigant in the

11   last case, obviously.

12         THE COURT:  Well, you know -- go to the microphone

13   over there.

14         MR. WEINSTEIN:  Sure.

15         So, putting aside for a moment the courtroom logistics

16   if we were to try that case.

17         THE COURT:  Aside from that Mrs. Lincoln, how is the

18   show?

19         MR. WEINSTEIN:  You know, the real issue in our view

20   is that the cases are so intertwined that to separate them

21   would, for the most part, just cause a bunch of duplicative

22   trials with, likely, the same witnesses.  I can't say 100

23   percent in every case, but most of the same witnesses, if not

24   all of the same witnesses, documents, experts.  So we would be

25   asking -- we would estimate, your Honor, that trial length for

O1AfCUSc

1    the trial we propose, the first trial, is approximately five

2    weeks.

3            If we were to somehow split that group up, we don't

4    think the first trial would be much different in length --

5    certainly not significantly different -- and then you would be

6    adding multiple trials, I'd say, of at least three weeks in

7    length each.  So we're asking the jury system to really ask

8    multiple juries to hear the same evidence for somewhat lengthy

9    periods of time and make factual determinations that are quite

10   similar.

11           Obviously each has different knowledge base and

12   intent.  Certainly as to the falsity element, it's the same

13   issue over and over.  I can describe to your Honor why the

14   evidence is it essentially the same.

15           THE COURT:  Let me ask you a different question.

16           MR. WEINSTEIN:  Sure.

17           THE COURT:  Rule 42 talks about consolidating cases

18   for trial, but it also talks about consolidating issues for

19   trial.

20           Is that an alternative here?

21           Suppose we had a consolidated trial on the issue of

22   falsity, and do it once.

23           MR. WEINSTEIN:  The reason why I don't think that

24   would be efficient is, the evidence on knowledge and intent is,

25   to some extent, in large part driven by the repetitive nature

O1AfCUSc

1    of what we say is the fraud scheme, which is the showing of the

2    falsity element.  And so, it's -- I haven't had a lot of time

3    to think about it, obviously.

4            THE COURT:  Well.

5            MR. WEINSTEIN:  That's hard to see how it would really

6    create efficiencies for the Court and for the jury system to do

7    it that way.

8            THE COURT:  Well, but consolidated-issue trial

9    wouldn't necessarily have to be falsity alone.  I mean, I

10   haven't thought through what your case would look like well

11   enough to say that there either is or isn't a broader group of

12   issues that could be tried together once and save a lot of

13   time.

14           And then you get to the individual issues separately,

15   but, it would be collateral estoppel or whatever the right

16   phrase is here, on the basic issue or collection of issues.

17           I mean, I'm starting a damages trial on Tuesday where

18   the liability has been established by prior trial, essentially.

19           MR. WEINSTEIN:  Yeah.  I think the issue with our

20   claims -- and your Honor said 63 cases or pension plans, which

21   is right; it's a long list, but to some extent it's very much a

22   rinse-and-repeat type of fraud.

23           While there may be 63 separate pension plans, it's

24   only because the defendant set up that many pension plans to do

25   the same thing, and they just give different names to it, but

O1AfCUSc

 1    it's the same fraud.  It's the same trading dates, the same

 2    trading information.  So, there are, in our view, ways to

 3    streamline the fact that it's 63, which is really robust use of

 4    rule 1006 summary charge for a lot of that.

 5            So we would propose, the way we would look at trying

 6    this is to really have our experts or witnesses talk about a

 7    few examples, and then, you know, in somewhat summary fashion

 8    say, that's what happened 63 times.

 9            THE COURT:  63 times.  I got that, but, let's move on

10    to 12 defendants.

11            MR. WEINSTEIN:  Right.  Well, other than the logistics

12    of that, which I know is not insignificant issue --

13            THE COURT:  No, not at all.

14            MR. WEINSTEIN:  There have been certainly cases in the

15    courthouse with many defendants -- I don't know if 12 -- but my

16    expectation, your Honor, is that that number will reduce

17    itself.

18            If you were to say we're all going to trial, it's not

19    going to be 12 defendants.  Obviously, I can't promise you

20    that, but I certainly have reason to believe that the number

21    will be reduced.

22            THE COURT:  That's the great principal of:  An

23    imminent execution tends to focus the mind.

24            MR. WEINSTEIN:  It certainly is, but I also think in

25    reality that that's true here.

O1AfCUSc

1          Because the cases really do belong together, we

2    propose that your Honor put them on or have defense counsel for

3    those defendants ready for that trial at that time.

4          If it turns out that some defendants as a result

5    resolve their cases before then, that's great.  If it turns out

6    that we're really approaching trial and that's not the case, we

7    could potentially revisit it.

8          We don't think it's necessary other than the

9    logistical challenge.  If I may your Honor, can I hand up just

10   one illustrative exhibit?

11          THE COURT:  Yeah.

12          MR. WEINSTEIN:  I think it just helps demonstrate why

13   really for this group, for that first group, why it needs to be

14   together and why their proposal doesn't make sense.

15          I'll hand a copy to defense counsel.

16          MS. McCARTHY:  Do you have 40 copies.

17          MR. WEINSTEIN:  I don't have 40.

18          May I approach, your Honor?

19          This is an exhibit, your Honor, which you can see it

20   was marked at one of the depositions.  It was used at many of

21   the depositions.  It's an email from defendant Markowitz to

22   codefendants van Merkensteijn and Klugman and a few others, and

23   this is what we've described at sort of the second wave of

24   pension plans when they established 39 new plans in 2014.

25          And this is the schedule that Mr. Markowitz is saying

O1AfCUSc

1    the trades that will happen for each, and at this point it's 34

2    plans.  They established an additional five after this date.

3    And this captures each of the defendants we're talking about.

4    So obviously, it's Mr. Markowitz, Mr. van Merkensteijn, and

5    Mr. Klugman on the email, but these are not just their pension

6    plans.  These are all of the pension plans for their friends

7    and family and others -- there are six others -- in which each

8    of them is a partner with the plan and really takes the bulk of

9    the proceeds from the plan -- to the extent the refunds come in

10   -- and this is just how the trading works.

11           It's just -- here's 36 plans.  Here's the trade.  It's

12   all one day; it's one stock.  They are very similar amounts

13   although they make them different in each case.

14           The defense proposal is, with respect to this exhibit

15   alone, to have, I think, eight separate trials.  That just

16   doesn't make any sense.  It's one scheme.  It's all done -- as

17   I say, this is literally rinse and repeat.  There's just no

18   reason to have more than one jury decide these issues, much

19   less seven or eight.

20           THE COURT:  And the 12 defendants you propose in your

21   first trial, who besides -- I know it's in your summary, but

22   just remind me.

23           MR. WEINSTEIN:  Sure.

24           THE COURT:  Who besides Markowitz, van Merkensteijn

25   Klugman?  Who are the other nine?

O1AfCUSc

1      MR. WEINSTEIN:  So, there's Mrs. Markowitz who had one

2   plan in the earlier period.  There's also Mrs. van Merkensteijn

3   who also had one plan -- each of whom essentially testified

4   that whatever my husband told me to do, I signed the papers.

5      There are the six what we call friends and family for

6   the later 2014 and '15 period.  That's Mr. Altbach, Mr. Lerner,

7   Mr. Herman, Ms. Jones, Mr. Miller, and Mr. Zelman.  They are

8   either -- two of them are relatives of Mr. Markowitz and he

9   brought them in, and the other four are friends of

10  Mr. van Merkensteijn.

11     THE COURT:  These are people who are all commonly

12  represented or not?

13     MR. WEINSTEIN:  Those six are commonly represented by

14  Ms. Rice, and for each of those, they had in a range of three

15  plans per person -- up to five or six -- but for each of them,

16  for every plan in that group, two of the three of them, of

17  Mr. Markowitz, Mr. van Merkensteijn, and Mr. Klugman, entered

18  into a partnership arrangement with the plan pursuant to which

19  the two the principal defendants ultimately got 95 percent of

20  whatever the plan was supposed to get and the plan participant

21  only received 5 percent, so they are just inextricably in that

22  sense.

23     I think we've now got up to 11 defendants, and the one

24  additional defendant is Mr. Ben-Jacob who is a defendant with

25  respect to every single pension plan in this group.

O1AfCUSc

1          THE COURT:  I should have mentioned at the outset, so

2    let me digress for a second.

3          One of my law clerks previously worked at WilmerHale,

4    and he's going to have nothing to do with this case, but I

5    wanted to make it a matter of record.

6          Go ahead.

7          MR. WEINSTEIN:  I'm sorry?

8          THE COURT:  I said go ahead.

9          MR. WEINSTEIN:  So the evidence -- really, this

10   document exhibits it, which is, the evidence is going to be the

11   same and it's going to be over and over.  And this is just one

12   date, so this is one dividend date for one particular company,

13   but it's the same thing for every other dividend date that

14   eventually generates a reclaim to SKAT, which is, it's going to

15   be trading data that's the same, 36 or 40 plans or whatever the

16   number might be for that given date, it's going to involve all

17   of the defendants.

18         The three principal defendants have a financial stake

19   in every single one of them.  There's really no way to split up

20   the evidence, the testimony, and the exhibits in a way that

21   would be efficient for the court system, so, we need to think a

22   little bit more about your Honor's suggestion of an issue

23   consolidation, and I do think that can work in certain cases,

24   but in this particular case, I don't think it's going to

25   mitigate how much evidence we would ultimately need to show

O1AfCUSc

1   another jury to establish knowledge and intent.

2           Because, as I said, a big part of our knowledge and

3   intent case is, this isn't one of them doing it with one

4   pension plan that was established.  It's done over and over and

5   over again and that's part of the evidence as to knowledge and

6   intent.

7           So I'm not sure we could really have a shorter quicker

8   second trial on knowledge and intent, and at that point, we

9   would still have 12 defendants, so the issue would be, how many

10  trials are you going to have among that group even if we could

11  separate them by issues.

12          THE COURT:  Address the issue of logistics, please.

13          MR. WEINSTEIN:  Well, that's a question that's a

14  little hard for me to address, other than -- I don't know the

15  courtrooms that would be available that could accommodate.  I

16  think in this courtroom, that would be difficult.

17          But there are the ceremonial courtrooms that have had

18  many in defendants at trial.

19          THE COURT:  We don't typically use the ceremonial for

20  trials, I think, because the acoustics are horrible.

21          MR. WEINSTEIN:  Yeah.

22          Two things on the numbers.  Two of the individuals

23  actually won't be at trial, for sure.  One has passed away

24  since we were last before your Honor, so while his plans are

25  still at issue, he personally, obviously, will not be here.

O1AfCUSc

1          And for that group, by the way -- it's six, that group

2      of six -- he's one of those six.  It is one defense counsel, so

3      we're not talking about lawyers for six separate defendants.

4      And in fact, I think with the spouses, they also share counsel

5      with their spouses.

6          THE COURT:  So if I bought into the 63 pension plan

7      proposal, how many defense lawyers counting each -- you know,

8      I'm not talking about all the assistants.

9          MR. WEINSTEIN:  Separately represented people would be

10     -- I think we're talking about five separately-represented

11     defense groups there.

12         And so, as I said, with respect to the individuals

13     themselves, in addition to Mr. Altbach who has since been

14     deceased Mr. Miller -- who is one of the six -- my

15     understanding is that for some years now, he's had advanced

16     Alzheimer's.  We've never even deposed him for that reason, so

17     he won't be here.  Again his plans will be certainly at issue

18     in the case, but he won't physically be here.

19         We're really talking about ten individuals.  My

20     expectation and probably your Honor's experience is, it will be

21     less than ten when we get to trial, and as we discussed, it's

22     not that many defense counsel, because they're not each

23     separately represented.

24         THE COURT:  So it sounds to me like you'd have ten

25     individuals and maybe ten lawyers on the defense side; yes?

O1AfCUSc

1          MR. WEINSTEIN:  I'll let them say how many they want.

2     I think we've got -- certainly each one will have one.  We're

3     talking about, did we say five or six lead defense counsel, and

4     you know, I can't say how many they want to have in the

5     courtroom next to them, but it sounds like ten is about right.

6          THE COURT:  Anything you want to add?

7          MR. WEINSTEIN:  With respect to that group, no.  I

8     mean, I would wait to hear their arguments as to why they

9     should be split up, but they're arguments that don't make a lot

10    of sense, other than the logistics.  That is really the issue.

11    Other than that, there is really no good reason to spit up or

12    efficient reason to split up the cases here.

13         THE COURT:  Okay.  Thank you.

14         It's going to be Ms. McCarthy.

15         MS. McCARTHY:  Yes, your Honor.

16         So, the good reason to split us up, your Honor, is

17    because of due process concerns and also --

18         THE COURT:  You left out presidential immunity.

19         MS. McCARTHY:  Presidential immunity does not come

20    into this particular trial, I'm happy to report.

21         As in any case, your Honor, every defendant has their

22    right to put forth their defense, their state of mind.  Each

23    defendant's state of mind here is extremely important.

24         One of the defenses will be the reliance on counsel.

25    Mr. Weinstein wasn't asked to discuss Michael Ben-Jacob who is

O1AfCUSc

1   one of the defendants that they propose be tried with this

2   large group.  Mr. Ben-Jacob is ably represented here by Tom

3   Dewey, and if the Court would like to ask him more specifics

4   about Mr. Ben-Jacob and his reason for not wanting to be tried

5   with these defendants, I think that that would be appropriate.

6           As far as we're concerned, we've been saying from the

7   very beginning that we relied upon counsel Mr. Markowitz,

8   Mr. van Merkensteijn waived privilege and testified about their

9   conversations with Mr. Ben-Jacob.  We produced all the

10  documents from Kaye Scholer.  Plaintiffs have had that for some

11  time.  They examined our clients about that.  They examined

12  Mr. Ben-Jacob about his conversations with our clients.

13          There are plenty of reasons why Mr. Ben-Jacob should

14  not be tried with Mr. Van Merkensteijn, Mr. Klugman, and

15  Mr. Markowitz.

16          THE COURT:  Would you like to share some of them with

17  me, or are you going to leave that to your colleagues?

18          MS. McCARTHY:  I think one of the issues has to do

19  with whether -- a disagreement on the scope of the

20  representation.

21          So, our clients -- and particularly, I believe

22  Mr. Klugman -- will be saying and has testified at his

23  deposition that it was his understanding that Mr. Ben-Jacob

24  looked at every aspect of the transaction.

25          There certainly is evidence that he was in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O1AfCUSc

1    communication with folks from Solo, so I think that there's a

2    reasonable basis to believe that Mr. Ben-Jacob was familiar

3    with the transaction and what was going on and then proceeded

4    to advise the clients on the transactions and setting up the

5    pension plans.

6         There are lots of pension plans here, of course, and

7    that sounds very shocking, but Kaye Scholer set up all those

8    pension plans.  Kaye Scholer knew how many pension plans there

9    were.  As you can see, there's going to be some pushing off on

10   to Kaye Scholer of, you guys knew what was happening; we were

11   your clients.  And we should be able to put on our defense in

12   full without being concerned about Michael Ben-Jacob's right to

13   defend himself in this trial.  He is going to have a different

14   story, I believe, and Mr. Dewey, maybe it's time for you to

15   tell the Court what you believe Mr. Ben-Jacob would be saying

16   in his defense.

17        THE COURT:  Before we get to Mr. Dewey, it wouldn't be

18   the first case where there were defendants tried together where

19   there was some tension between the defendants as to who was

20   really responsible; right?

21        MS. McCARTHY:  Your Honor, I think when you come down

22   to -- I think so it's unusual in this case.  This isn't a

23   criminal case; right?  You come down to the point where you're

24   putting on their lawyer; it's a very different thing than

25   saying that you have a co-conspirator in a criminal case.  You

O1AfCUSc

1   have their lawyer who advised them on the very transactions

2   that are at issue in this trial.  The lawyer has certain

3   ethical issues or professional responsibility issues that they

4   don't want to be pointing fingers at each other sitting in the

5   same courtroom with each other.  Their defenses are curtailed,

6   and I think that by having this --

7           THE COURT:  Whose defenses are curtailed?

8           MS. McCARTHY:  Mr. van Merkensteijn and Mr. Markowitz

9   and Mr. Klugman's defenses, and derivatively, their spouses.

10          THE COURT:  If they're tried individually, they're

11  going to be pushing off on Ben-Jacob anyway, and Ben-Jacob will

12  be called as a witness anyway.  Isn't that true?

13          MS. McCARTHY:  Yeah, but it's very different when he's

14  a codefendant in the same trial, your Honor.

15          It's a severable case.  It demands severance, we

16  submit, that Mr. Ben-Jacob should not be tried with these

17  defendants.

18          THE COURT:  All right.  Unless you have something else

19  to add, I'll hear from Mr. Dewey.

20          MS. McCARTHY:  Okay.

21          MR. DEWEY:  Good morning, your Honor.

22          THE COURT:  Good morning to you.

23          MR. DEWEY:  Three points very briefly, if I may.

24  First, Mr. Ben-Jacob is differently situated from all the other

25  defendants.  He did not receive a dime of proceeds from the

O1AfCUSc

1    trading, and SKAT has now voluntarily dismissed the money had

2    and received in unjust enrichment claims against him.

3        THE COURT:  But he certainly, through Kaye Scholer,

4    got a lot of money for this.

5        MR. DEWEY:  They were paid legal fees.  That's

6    correct, your Honor.  But they did not benefit from the trading

7    strategy.

8        Number two, as Ms. McCarthy said, there is a

9    difference on scope of representation.  Mr. Ben-Jacob a T&E

10   lawyer.  His colleagues at Kaye Scholer did certainly advise

11   the defendants on setting up the plans on U.S. pension law

12   issues and other corporate law issues.  They are not Danish

13   securities lawyers.

14       It's not just the fact that there is some conflict in

15   testimony, which, as your Honor pointed out, happens in life.

16   It's the fact that there is a conflict in testimony between the

17   clients and Mr. Ben-Jacob who owes those clients duties of

18   loyalty and duties of confidentiality.

19       The related issue I would point out to your Honor is

20   --

21       THE COURT:  Well, when they start pushing off against

22   him he is significantly released from those duties; isn't he?

23       MR. DEWEY:  Perhaps.  That itself is an ethical issue

24   that we have to cross.

25       THE COURT:  But it's not such a big deal.  The

O1AfCUSc

 1   canons -- or whatever we call them nowadays -- have an

 2   exception to those duties for defending yourself.

 3           MR. DEWEY:  True, your Honor.  The related issue

 4   though is that we would have to bring out scope of

 5   representation issues before the jury.

 6           Related to that, my third point is, if your Honor puts

 7   Michael Ben-Jacob in with these defendants, your Honor is going

 8   to have a minitrial on legal ethics issues.  SKAT has found

 9   some person who is apparently going to come in and testify that

10   Mr. Ben-Jacob violated the rules of professional conduct.

11           We have our own expert who is prepared to address

12   those issues.  Those are not the core issues in the case, to

13   put it mildly, but if Mr. Ben-Jacob is in the mix --

14           THE COURT:  Why aren't those issues of law?

15           MR. DEWEY:  They very well may be, your Honor, but

16   this is the way SKAT has chosen to frame the case.

17           THE COURT:  That doesn't mean they're going to be able

18   to do it.

19           MR. DEWEY:  I understand, your Honor.

20           And my feeling is, there are going to be motions

21   addressed to that, which, my guess is, will not be a surprise

22   to your Honor.

23           I guess my point is that even if the legal ethics

24   experts sort of are put to one side, we are still necessarily

25   going to have to try what I will call legal ethics issues as

O1AfCUSc

1    part of the main case, which doesn't make a lot of sense.

2                The last point I would make, your Honor, is that if

3    there is a --

4                THE COURT:  The legal ethics issues, if I'm

5    understanding both of you correctly, boil down to a factual

6    dispute about what the deal was on the lawyers' engagement.

7                It's like a contract case.

8                MR. DEWEY:  No.  I think there are some other

9    collateral issues, like who said what to whom kind of thing

10   which.

11               THE COURT:  Those aren't collateral issues.

12               MR. DEWEY:  It will come out, certainly, your Honor.

13               The other point I would make is that a separate trial

14   to Mr. Ben-Jacob -- to the point your Honor raised -- may well

15   not happen depending on the outcome of the first trial, and I

16   think that it could be significantly streamlined through

17   stipulation and otherwise, and it would enable a jury to focus

18   on what we respectfully submit are the unique and different

19   issues affecting Mr. Ben-Jacob as opposed to all the other

20   defendants.

21               THE COURT:  Your position boils down to, if I

22   understand you correctly, the argument that Ben-Jacob should

23   not be tried together with the others and that as to the

24   plaintiff's proposal for 12 trials with the 63 pension plans --

25   I don't mean 12 trials -- 11 of the 12 defendants, you don't

O1AfCUSc

1    have a problem.

2              MR. DEWEY:  That's right, your Honor.

3              Our point is simply, the issues with respect to

4    Mr. Ben-Jacob are substantially different.  They raise a whole

5    host of different issues and there is an extreme risk, in our

6    view, both of prejudice to Mr. Ben-Jacob, and frankly,

7    prejudice to the codefendants.

8              And I think the likelihood of a second Ben-Jacob-only

9    trial is relatively low for the reasons that your Honor

10   articulated, and if that were to be the case, I think the

11   separate issues as to him can be tried in an expedited and

12   sensible way.

13             THE COURT:  Procedurally, a way in which I could

14   attack this if I were otherwise persuaded by the plaintiff's

15   proposal for trial one is to consolidate those cases for trial,

16   and you could move for a severance.

17             MR. DEWEY:  You could proceed that way your Honor,

18   absolutely.

19             THE COURT:  There are other ways to skin that cat, I

20   suppose.

21             MR. DEWEY:  Exactly so, your Honor.

22             THE COURT:  Anyone else on the defense side want to

23   address this?

24             MR. ROSENSAFT:  Your Honor, I'd like to add a few

25   things, if it's all right.

O1AfCUSc

1          THE COURT:  Sure.

2          Thank you, Mr. Dewey.

3          MR. DEWEY:  Thank you, your Honor.

4          MR. ROSENSAFT:  I'll be short, your Honor.

5          Michael Rosensaft, representing Robert Klugman.

6          I just wanted to respond to a couple of things that

7    plaintiff's counsel said.  I know they have the idea that if

8    you have 12 defendants, maybe by the time you get to trial

9    there's less.  I don't think we can use that as a basis to

10   separate the trials after the amount of time this case has gone

11   on.

12         THE COURT:  Look, I've had a 57-defendant indictment,

13   which resulted in zero trials.

14         MR. ROSENSAFT:  I just think it's more likely that if

15   you have three defendants, it's more likely that when that case

16   is tried and we see the result of that case, then we're going

17   to have settlements, however that case comes out.  I don't

18   think you have to have 12 to start.

19         And just the second point I wanted to make, which I

20   know we've made in your papers as well, is with respect to the

21   jury, and if they can determine separate scienter for each of

22   the 12 different defendants, if that's a better way to handle

23   this case than if they're concentrating on three defendants and

24   then --

25         THE COURT:  But the use of 12 significantly overstates

O1AfCUSc

1    doesn't it, because when you treat spousal pairs, that knocks

2    it down almost by half right away; doesn't it?

3            MR. ROSENSAFT:  I think that shows the problem.  That

4    assumes that the jury is going to come up with a decision for

5    all spousal pairs together, and I think that's what plaintiff

6    is suggesting, that they can just have a category and they can

7    say they're liable or not, and then they can have another

8    category and they could say they're liable or not.

9            And I think that would be inappropriate.  The jury has

10    to look at each one.  They each have different conversations,

11    and I think that illustrates the problem with plaintiff's

12    approach.

13            THE COURT:  Another way to do this might be to go back

14    to the bellwethers that we identified on for summary judgment

15    purposes.  Suppose I consolidated the four SDNY bellwethers and

16    tried those first.

17            What about that?

18            MR. ROSENSAFT:  That is something we considered too,

19    obviously, in looking at this.

20            I'm not sure.  Again, the way I look at it is, how can

21    we present a case that's most streamlined, such that a jury can

22    understand it and it's logistically feasible just in the

23    courtroom and handling among defense counsel who may have

24    different strategies, may want to question witnesses in

25    different ways, which we'll have to coordinate.

O1AfCUSc

1          I think the bellwethers, while it was a great way to

2    talk about motions and maybe going forward as we talk about

3    pretrial motions it makes sense to handle those differently as

4    well.  At a trial, it may lead to those complications where a

5    three-defendant trial, I think, would both be able to be

6    understood by the jury, logistically possible, and my guess is,

7    at the conclusion of that trial, however it ends, we would have

8    some resolution of other cases as well.

9          THE COURT:  Okay.  Thank you.

10          Anyone else on the defense side want to speak?

11          MS. McCARTHY:  Your Honor, if I could just address the

12    last suggestion that the Court made.

13          THE COURT:  Sure.

14          MS. McCARTHY:  I believe I'm looking at -- just so

15    everybody -- in case you have the Court's decision and you

16    don't remember the five bellwethers from the Southern District,

17    it might be worth saying what they are so everybody understand

18    what we're talking about.

19          One is RJM Capital Pension Plan, which is Richard

20    Markowitz; the other is Basalt Ventures and John van

21    Merkensteijn; Roadcraft Technologies and Ronald Altbach; Proper

22    Pacific and Doston Bradley; and FWC Capital and Roger Lehman.

23          THE COURT:  FWC I thought was a Florida case

24    originally; isn't that right?  So under lexicon, I can't try

25    that, I think.  Correct me if I'm wrong, please, if you know.

O1AfCUSc

1          MR. LOPICCOLO:  Good morning, your Honor.  Joseph

2    LoPiccolo, Poulos LoPiccolo PC on behalf of Roger Lehman and

3    his associated pension plans.

4          That's correct.  It is a Florida case.

5          THE COURT:  Okay.  Thank you.

6          MS. McCARTHY:  So then I guess we're talking about

7    four.

8          And then, your Honor, the first three are Solo plans

9    related to the Sanjay Shah company, Solo, and I believe that --

10   is Proper Pacific Solo?

11         MR. LOPICCOLO:  Yes.

12         MS. McCARTHY:  Okay.

13         So I guess this is something we can talk about.  I

14   think we haven't discussed this with SKAT.  It may make sense

15   for us to do that so that we can tell you whether or not that

16   we think that we could do it.

17         Mr. Bradley is unfamiliar to our clients, so I think

18   they have different facts associated with them, that it may

19   make a difference in how the prof is presented, and I just am

20   not sure.  We haven't really given that any thought so if maybe

21   we could have some time to chat about that, it would be useful.

22         THE COURT:  And are there any Southern District EDNY,

23   meaning Southern District filed initially?

24         Excuse me.  I misspoke.  Are there any initially

25   Southern-District-filed ED&F cases?

O1AfCUSc

1          MR. WEINSTEIN:  Yes, your Honor.  May I?

2          THE COURT:  Yeah.  Please.

3          MR. WEINSTEIN:  There are five Southern-District-filed

4    ED&F cases.  We had proposed that in our proposal as to

5    consolidate those five as trial three.

6          If I may address both your Honor's suggestion of doing

7    the bellwethers as a case but also the issues with Michael

8    Ben-Jacob.

9          THE COURT:  Yeah.  Please.

10         MR. WEINSTEIN:  With respect to Mr. Ben-Jacob, I think

11   as your Honor hit upon, the witnesses are going to be the same.

12   And this issue that he has a duty of loyalty and

13   confidentiality is going to be no different if he's tried

14   separately and the same witnesses -- in fact, his clients, we

15   would call them as witnesses in the case, and he would have the

16   same issue of whether he's got a duty of loyalty and

17   confidentiality -- which, as your Honor noted, I think he is

18   able to defend himself.  He will be, according to them,

19   pointing fingers at them, but he'll be doing it in a courtroom.

20         The only issue is whether he's doing it during the

21   same trial or two different trials with the same exact

22   witnesses.  We expect that in a separate trial for him, one, we

23   would have to put in evidence of the 63 pension plans for which

24   he sued.

25         It is possible that if there's a first trial on those

O1AfCUSc

1    -- certainly as to falsity, perhaps he would acknowledge that

2    we've met the falsity element, but we still have to put in at

3    least some of that evidence so the jury understands his role

4    and involvement in so many pension plans, and not just so many;

5    multiple for a single person, which in and of itself is unique

6    and in our view, a sham.

7            So not only would Mr. van Merkensteijn and

8    Mr. Markowitz be witnesses, but the six friends and family we

9    would want to call to say, I never met the guy in my life.  He

10   was supposedly my lawyer.  He never asked me what my six

11   different business were that I set up yesterday and had six

12   different pension plans set up by him and his firm, never

13   talked to me about that.

14           So all those people are going to be witnesses at the

15   trial, and they're going to be witness at the first trial.  So

16   the evidence really -- there's a possibility of some streamline

17   nature of the evidence, but the witnesses are all going to be

18   the same.

19           He's going to have to point fingers -- if that's his

20   defense -- at the same witnesses, implicating whatever duty of

21   loyalty or confidentiality he might have.

22           With respect to the possibility of just doing a

23   bellwether trial, the reason we didn't propose that here is

24   that -- let's just stick with three of the bellwethers, which

25   are -- let's leave Doston Bradley to the side for a moment,

O1AfCUSc

1    because his is a different case, and we don't think that that

2    should be joined.  But for the three that touch upon this first

3    trial group. it would not do justice to our case for sure to

4    say that a jury should just focus on Mr. Markowitz's conduct,

5    intent, and knowledge with respect to this one pension plan.

6    Because that's not the case.  That's not the extent of the

7    scheme.  That's not the evidence that shows the fraud.  We

8    would seek to admit much of the same evidence about his role in

9    dozens of pension plans.

10            Now, the jury ultimately might not have to do a

11    verdict form with respect to each of those, but it will not

12    shorten much of the trial at all, and so in our view, that

13    evidence needs to come in.  We're going to try streamline it as

14    we said, with summary exhibits.  Let's get it in and have the

15    jury that is considering those issues make a determination as

16    to all those plans that these folks established.

17            THE COURT:  Okay.  Thank you.

18            I think the most productive thing to do is to take two

19    weeks to give you time all to talk to each other in light of

20    what's been said this morning and then to file some papers in

21    light of the discussion today.

22            And in the unlikely event that you all come to an

23    agreement, you can file one paper jointly.  If not, you can

24    file two, plaintiff and defendants.

25            So let's have those papers, the initial papers be the

O1AfCUSc

1    defendant's papers as to why I shouldn't adopt the plaintiff's

2    plan in two weeks and that includes, of course, the issue of

3    Mr. Ben-Jacob and joint trial, a response from the plaintiff a

4    week later, and a reply a week after that.

5          And then if I think it would be helpful to have

6    argument, I will; and if I don't, I'll tell you what I'm going

7    to do, and we'll go from there.

8          I think as a practical matter, we're probably -- but

9    you can't yet bank on it because my schedule changes -- looking

10   at an initial trial in the fall and maybe the only trial in the

11   fall.  But we'll see how it goes.

12         Anything else we can accomplish usefully this morning?

13         MR. WEINSTEIN:  Your Honor had asked in pretrial order

14   No. 33 and I think the submissions touch upon a little about

15   other pretrial proceedings in addition to our trial proposals.

16   I don't know if your Honor wants to hear about that today.

17         THE COURT:  Well, I think it's premature, actually

18   until I decide what the shape of the table looks like, but I

19   certainly took one side's proposal as essentially kind of a

20   loose list of subject areas, the effect of the adoption of

21   which would be to do motion practice for the next four years,

22   and I'm not interested.

23         We're going to decide what the first case is or the

24   case is that's going to go to trial, and we'll deal with

25   whatever has to be dealt with for that case in the run up to

O1AfCUSc

1    that trial, and we'll see where we go from there.

2            I think that's the way I'm going to handle it.  And

3    then things will shake out.

4            MR. WEINSTEIN:  Second, I just wanted to know if your

5    Honor wants updates at all on two things, one is the status of

6    settlements, and secondly, foreign proceedings.  Your Honor has

7    asked in the past.  I'm happy to give a short update if your

8    Honor would like.

9            THE COURT:  Sure.

10            MR. WEINSTEIN:  Okay.

11            With respect to settlements, to date, SKAT has settled

12    with respect to 30 different parties in the MDL, eleven of

13    which are individuals, 19 of which are pension plans, and we

14    have agreements in principle, settlement agreements where the

15    paperwork is pending with respect to an additional 13 parties.

16    I think that's three individuals.

17            I did want to point out, just because there is a

18    pending motion before your Honor that is impacted by one of

19    these, so I don't want your Honor --

20            THE COURT:  This is the Acer third party.

21            MR. WEINSTEIN:  That's the other pending motion.

22    That's not impacted by any ongoing settlement issues.

23            There was a latecomer to the MDL, which was *SKAT v.*

24    *Anthony Sinclair*, a case transferred over from Ohio.  There's a

25    pending as of April of '23.  There's a pending motion to

O1AfCUSc

1    dismiss, but we have reached an agreement in principle with

2    Mr. Sinclair.  So while that motion is pending, in our view, no

3    need for the Court to be working on that.

4                THE COURT:  Okay.  I appreciate that.

5                That one, the pendency of that motion never got on my

6    radar, because it must have been pending in Ohio; right?

7                MR. WEINSTEIN:  It was filed in Ohio.  The opposition

8    was filed in Ohio.  It was transferred to this court.  The

9    reply was filed here.  I can give your Honor the ECF numbers:

10   ECF 884 at least was the reply of April 25, 2023.  And then we

11   had sent your Honor a letter on April 27 of last year, just

12   courtesy copies of original complaint and the papers that had

13   been filed in Ohio.  But as I note, in our view, no need to

14   deal with that motion because we do have an agreement in

15   principle.

16               THE COURT:  I appreciate that.

17               And some day the administrative office will figure out

18   a way to put on to the docket of a transferee judge a motion

19   that was filed in the transferor court.

20               I mean, it comes.  It's on the docket sheet, but it's

21   not on the list of pending motions in the computer.  Nothing

22   perfect.

23               MR. WEINSTEIN:  As far as pending motions go, the only

24   other one that we understand to be pending, I think your Honor

25   had mentioned, which was the motion with respect to third-party

O1AfCUSc

claims against ED&F.  That, I think, is a short update on
settlements.

        And with respect to foreign proceedings, most foreign
cases are moving along.  In Dubai there was actually judgment
in SKAT's favor against Sanjay Shah and others, which was
affirmed by the highest court in Dubai, although there is what
they call a motion for reconsideration pending of that.

        In Malaysia there is a trial underway, but the way
they proceed with trials it's sort of intermittent, a few days
here, a few days there.

        THE COURT:  Like arbitration.

        MR. WEINSTEIN:  Exactly.

        That will be going on, I think, for quite some time.

        In England trial is set to begin in April, but also in
chunks.  That's scheduled to go through March of next year.

        As you know, I believe your Honor knows that the
revenue rule is now -- their version was rejected by England's
highest court, so that's the final say there.

        And only because it's come up before, since I think
last time we were in court SKAT in England did file fraud
claims against ED&F Man.  That was an issue that was raised in
some papers, that they had not been sued for fraud.  That is
now not the case, although there is a motion to strike those
claims.  That's going to be heard later this month.

        And I think last, in Denmark there are no

O1AfCUSc

1    administrative proceedings left with respect to issues that

2    have been raised earlier in this case.  They've either been

3    decided in SKAT's favor or withdrawn.  SKAT obtained a judgment

4    against a law firm, Bech Bruun, in connection with its role in

5    the NCB part of the case for 400 million kroner, which was

6    affirmed on appeal by Denmark's supreme court.

7            There are some issues determined by the supreme court

8    there that we think would bear on the issues here such as

9    statute of limitations and contributory negligence, but we'll

10   obviously address those if and when it becomes necessary for

11   jury instructions.

12           THE COURT:  I think it would be useful if when there

13   are developments in these foreign cases that you just routinely

14   advise me in writing with copies to everybody.

15           MR. WEINSTEIN:  We will do that.

16           I think some these issues we have, but we will.

17           Is this the kind of detail -- is this what the Court

18   would want?

19           THE COURT:  Yeah, copies of decisions.

20           MR. WEINSTEIN:  We'll put in one that addresses all of

21   these, and we'll attach decisions for the Court.

22           THE COURT:  Fine.  Okay.

23           MR. WEINSTEIN:  I think that's the update.

24           MS. McCARTHY:  Not quite.  That was a lot of updates.

25           Judge, just so we're clear, none of those proceedings

O1AfCUSc

1    in the foreign countries had anything to do with the clients,

2    except, I think, maybe the last bit about administrative

3    proceedings in Denmark.

4              Is that right, Mr. Weinstein?

5              MR. WEINSTEIN:  Well, her client was not a party in

6    those cases, other than administrative.

7              MS. McCARTHY:  Correct.  That's what I was --

8              MR. WEINSTEIN:  There are certainly issues that bear

9    on the complaint against her client.  For example, there

10   statute of limitations and contributory negligence defenses

11   which were rejected soundly by the supreme court of Denmark.

12             THE COURT:  Soundly, yeah.

13             MS. McCARTHY:  Not parties was my intention.  Thank

14   you for that admission.

15             Your Honor, we are interested in knowing on behalf of

16   the non-Southern-District defendants in this MDL what the

17   Court's thinking is on the timing of transferring them back to

18   their original districts.

19             THE COURT:  I think there's plenty of consolidated

20   work left to do.

21             MS. McCARTHY:  Is it the Court's view then that it

22   will be after the first trial or will it be after dispositive

23   motions in limine?  Do you have any thinking on that, or --

24             THE COURT:  It's going to be a while.

25             MS. McCARTHY:  Okay.

O1AfCUSc

1          THE COURT:  My general view -- and I can't give you a

2     definitive application in this case -- is that when the case,

3     figuratively speaking, is ready for jury selection, that's when

4     I send them back.

5          MS. McCARTHY:  Does anybody have any questions on that

6     issue?

7          MR. BLESSINGTON:  No.

8          MS. McCARTHY:  Okay.

9          Thank you, your Honor.

10          THE COURT:  Okay.  Thank you.

11          (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25